Filed 11/24/20  3250 Wilshire Boulevard Partners v. Min CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| 3250 WILSHIRE BOULEVARD PARTNERS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW MIN,<br><br>    Defendant and Appellant. | B297993<br><br>(Los Angeles County<br>Super. Ct. No. BC212561) |

APPEAL from an order of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Law Offices of E. Thomas Dunn, Jr., and E. Thomas Dunn, Jr., for Defendant and Appellant.

Raiskin & Revitz and Steven J. Revitz for Plaintiff and Respondent.

_____

Defendant Andrew Min appeals from the trial court's order denying his motion to vacate a judgment entered in 2000 in favor of his former landlord, plaintiff 3250 Wilshire Boulevard Partners (landlord), as well as 2010 and 2019 renewals of the judgment. We affirm.

## BACKGROUND

### I. Min's Leases With Landlord

On June 25, 1998, Min and John Lee (collectively, tenants) entered into a four-year agreement with landlord to lease office space located at 3250 Wilshire Boulevard, Suite 1005 (the Suite 1005 lease). Paragraph 27 of the Suite 1005 lease provided landlord could serve tenants with notices required or permitted under that lease by mailing notices to tenants at the subject property (hereafter referred to as Suite 1005).

According to Min, as set forth in his declaration in support of the motion at issue on appeal, he moved out of Suite 1005 on October 8, 1998, and thereafter had no further contact with cotenant Lee. On October 15, 1998, Min entered into a separate, three-year agreement with landlord to lease office space at a different suite in the same building, 3250 Wilshire Boulevard, Suite 601 (the Suite 601 lease). He remained bound by the Suite 1005 lease. He stated in his declaration that landlord "promised to try and take [his] name off the old [Suite 1005] lease as [he] used them [landlord] to rent another space in the same building."

On June 16, 1999, Min sent a letter to landlord's chief financial officer (CFO), stating he had decided to terminate the Suite 601 lease after previous discussions with landlord about it. Regarding the Suite 1005 lease, Min explained in the same letter: (1) he left Lee's company in October 1998; (2) Lee's attempt to remove his name from the Suite 1005 lease was rejected by

2

landlord in early 1999; (3) he was aware Lee was past due on the rent for Suite 1005; and (4) landlord's agent told him he would "be 'hit' also" if Lee went into default. Min requested "further help on the [Suite 1005] lease" of a nature not specified in the letter.

On June 17, 1999, the day after Min sent the letter to landlord, he and landlord signed an agreement terminating the Suite 601 lease. They did *not* enter into a new agreement regarding the Suite 1005 lease.[1] Landlord's now-former CFO, with whom Min negotiated the termination of the Suite 601 lease, stated in a declaration in support of landlord's opposition to the motion at issue on appeal that he "rejected Min's request that he be released from liability in connection with the Suite 1005 [l]ease." The former CFO also stated in his declaration that Min vacated Suite 601 on or before June 17, 1999, and he did not leave a forwarding address with landlord.[2]

## II. Landlord's Unlawful Detainer Action Against Lee and Min

On June 17, 1999, the same day Min entered into an agreement with landlord terminating the Suite 601 Lease, landlord issued a 3-day notice to pay rent or quit against Lee and

---

[1] The Suite 1005 lease provided that any amendment to any term of the lease required a written agreement signed by the parties.

[2] Min did not dispute below or on appeal that he failed to provide a forwarding address to landlord when he moved out of 3250 Wilshire Boulevard. As set forth above, Min was still a party to the active Suite 1005 lease when he moved out of the building.

Min under the Suite 1005 lease, stating they were $23,957.53 in arrears on the rent.  The same day, landlord served Lee and Min by posting the 3-day notice at, and mailing the 3-day notice to, Suite 1005.  On June 25, 1999, landlord filed an unlawful detainer action against Lee and Min, seeking possession of Suite 1005 and rent owed under the Suite 1005 lease.

On or about November 5, 1999, landlord filed an application in the trial court for an order allowing it to serve Lee and Min with the summons and unlawful detainer complaint by posting the documents at, and mailing them to, Suite 1005, pursuant to Code of Civil Procedure section 415.45.[3]  In support of landlord's application, landlord's attorney submitted a declaration, explaining:  (1) that landlord had unsuccessfully attempted to personally serve Lee and Min at Suite 1005; (2) that landlord did not know either Lee's or Min's residence address; and (3) that Lee's and Min's last known address was Suite 1005.  Counsel attached to his declaration the process server's

---

[3] Code of Civil Procedure section 415.45 provides (and provided at all times relevant to this action), in pertinent part:  "A summons in an action for unlawful detainer of real property may be served by posting if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in any manner specified in this article other than publication . . . ."  (Code Civ. Proc., § 415.45, subd. (a).)  The statute further provides:  "The court shall order the summons to be posted on the premises in a manner most likely to give actual notice to the party to be served and direct that a copy of the summons and of the complaint be forthwith mailed by certified mail to such party at his last known address."  (Code Civ. Proc., § 415.45, subd. (b).)  Further statutory references are to the Code of Civil Procedure.

4

declarations, detailing numerous unsuccessful attempts between July 2 and July 22, 1999 to personally serve Lee and Min at the locked office at Suite 1005, and stating it "appear[ed]" that Lee and Min were "evading service."[4]  On November 5, 1999, the trial court issued an order authorizing landlord to serve Lee and Min with the summons and unlawful detainer complaint by posting the documents at, and mailing them by certified mail to, Lee and Min's "last known address" at Suite 1005.  On November 19, 1999, landlord filed proofs of service indicating that on November 10, 1999, it served Lee and Min with the summons and unlawful detainer complaint in compliance with the trial court's order (by posting the documents at, and mailing them by certified mail to, Suite 1005).

## III.  Money Judgment and Renewal of Judgment

On January 5, 2000, landlord served Lee and Min by mail at Suite 1005 with a request for entry of default in the unlawful detainer action.  On February 16, 2000, the trial court entered default against Lee and Min.  On February 18, 2000, the court entered a judgment for possession of Suite 1005 in favor of landlord and against Lee and Min.  And, on May 24, 2000, the

---

[4] According to a later statement made by landlord's office manager for 3250 Wilshire Boulevard in her April 7, 2000 declaration in support of landlord's application for default judgment against Lee and Min, "[d]efendants . . . vacate[d]" Suite 1005 on July 27, 1999, six days before the process server first attempted personal service of the summons and unlawful detainer complaint on Lee and Min at Suite 1005.  Presumably, it was Lee who vacated Suite 1005 on July 27, 1999, as landlord maintains Min moved out of the building on or before July 17, 1999, as set forth above, and Min does not state otherwise.

court entered a money judgment in favor of landlord and against Lee and Min in the amount of $30,115.56 (past due rent, plus interest and attorney fees).

On October 13, 2000, Lee filed a motion to vacate the default judgment, arguing he "was not given actual notice of the summons and complaint," and that he "learned of this matter on or about May 15, 2000" (nine days before the trial court issued the final judgment). Min did not join Lee's motion or file a motion of his own. On November 21, 2000, the trial court denied Lee's motion, concluding there was an "insufficient showing that [Lee] was not in fact served, acted diligently to set [the] default aside, or has a meritorious defense" to the unlawful detainer action.

On January 27, 2010, landlord obtained a renewal of the May 24, 2000 money judgment against Lee and Min. On February 2, 2010, landlord served the trial court's January 27, 2010 Notice of Renewal of Judgment on Lee and Min by mail at 3200 Wilshire Boulevard, Suite 1007. Landlord and Min agree that this was an address where Lee moved sometime after he moved out of Suite 1005, and not an address associated with Min.

After trying to locate Min for many years, on November 7, 2018, landlord found "a good business address for Min" through a Westlaw search, as stated in landlord's attorney's declaration in support of landlord's opposition to the motion at issue on appeal. Two days later, on November 9, 2018, landlord applied for a second renewal of the May 24, 2000 money judgment. Also on November 9, 2018, landlord served Min by mail, at the business address for Min that landlord had found two days earlier, with a memorandum of costs in the unlawful detainer action. In his declaration in support of the motion at issue on appeal, Min

6

acknowledged he received the memorandum of costs in November 2018.[5]

## IV. Min's Motion to Vacate the Money Judgment and Renewals of Judgment

On February 22, 2018, Min filed a motion to vacate the May 24, 2000 money judgment and the renewals of that judgment.[6] He asserted in the motion that he was unaware of the unlawful detainer action landlord filed in June 1999 until he received the memorandum of costs more than 19 years later in November 2018, because landlord never served him with the summons and complaint or any document other than the memorandum of costs. His legal arguments in support of his request for vacation of the judgment and renewals of the judgment were based on this assertion that landlord failed to serve him with the summons and complaint. Landlord filed an opposition to Min's motion, arguing, among other things, that service of the summons and complaint on Min complied with law and the trial court's November 5, 1999 order regarding such service.

_____

[5] The trial court did not issue its Notice of Renewal of Judgment on landlord's November 9, 2018 application for a second renewal of the money judgment until February 28, 2019. Thus, landlord did not serve Min with notice of the second renewal in November 2018.

[6] Although landlord had not yet served Min with notice of the second renewal of the judgment—because the trial court had not yet issued its February 28, 2019 Notice of Renewal of Judgment—Min was aware of landlord's November 9, 2018 application for a second renewal of the judgment, presumably from a review of the court file.

On March 26, 2020, after hearing oral argument by the parties, the trial court denied Min's motion to vacate the May 24, 2000 judgment and renewals of the judgment.

On March 27, 2020, landlord served Min by mail, both at his business address and at the address of his attorney of record on the motion, with landlord's January 27, 2010 application for renewal of judgment and the trial court's February 2, 2010 Notice of Renewal of Judgment. On April 10, 2020, landlord served Min by mail, both at his business address and at the address of his attorney of record on the motion, with landlord's November 9, 2018 application for renewal of judgment and the trial court's February 28, 2019 Notice of Renewal of Judgment.

## DISCUSSION

On appeal, Min contends the trial court abused its discretion in declining to vacate the renewals of the judgment under section 683.170 on the ground landlord failed to serve him with the summons and unlawful detainer complaint.[7]

"The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170. [Citations.] On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion." (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 199 (*Fidelity*).)

---

[7] Min raised other legal arguments below in his motion to vacate the judgment and renewals of the judgment. He has abandoned those arguments on appeal by failing to mention them in his appellate briefing.

Under section 683.170, a renewal of a money judgment "may be vacated on any ground that would be a defense to an action on the judgment . . . ." (§ 683.170, subd. (a).) A failure to serve the summons and complaint is a proper ground to vacate the renewal of a judgment under section 683.170, regardless of whether the defendant can show he or she had a meritorious defense to the underlying action. (*Fidelity*, *supra*, 89 Cal.App.4th at pp. 200-203, 205-206.) A motion under section 683.170 must be made "[n]ot later than 30 days after service of the notice of renewal." (§ 683.170, subd. (b).) A defendant's failure to challenge a default judgment within a reasonable time is not a bar to a motion to vacate a renewal of a judgment. (*Fidelity*, at pp. 203-204.) "A successful motion under section 683.170 does not affect the validity of the default or the default judgment. [Citation.] A successful motion under section 683.170 vacates only the renewal of the judgment thereby precluding its extended enforceability under section 683.120." (*Ibid.*)

Min argues his motion under section 683.170 was not untimely as he was not properly served with the trial court's January 27, 2010 Notice of Renewal of Judgment prior to the time he filed his motion.[8] We agree. The 30-day period within which to file a motion under section 683.170 does not begin to run until service of a notice of renewal of the judgment. (*Fidelity*, *supra*, 89 Cal.App.4th at p. 204.) On February 2, 2010, landlord served the trial court's January 27, 2010 Notice of Renewal of

---

[8] As explained above, when Min filed his motion on February 22, 2019, the trial court had not yet issued its February 28, 2019 Notice of Renewal of Judgment on landlord's November 9, 2018 application for a second renewal of the judgment.

Judgment by mail at Lee's business address, an address not associated with Min.

We disagree, however, with Min's argument that he is entitled to relief under section 683.170 due to defective service of process of the summons and complaint. Min asserts that at the time landlord served the unlawful detainer complaint in November 1999, his last known address was Suite 601, and landlord should have served him there, instead of at Suite 1005, and landlord should have informed the trial court in November 1999 that Suite 601 was his last known address. Not so. Min terminated the Suite 601 lease by written agreement with landlord before he moved out of 3250 Wilshire Boulevard. He vacated the building without providing a forwarding address to landlord, knowing he was still a party to the active Suite 1005 lease because he and landlord had not signed an agreement terminating that lease, and knowing there was back rent due under that lease. Min simply walked away from the Suite 1005 lease, apparently hoping landlord would not catch up with him because he did not provide a forwarding address. But Suite 1005 was not only Min's last known address, it was his current address under the active Suite 1005 lease to which he was still a party and under which he agreed to receive notices at Suite 1005. Complying with the trial court's November 5, 1999 order, landlord served Min with the summons and unlawful detainer complaint by posting the documents at, and mailing the documents by certified mail to, Suite 1005. The trial court did not err in denying Min's motion to vacate the renewal of the judgment under section 683.170, as landlord properly served the summons and unlawful detainer complaint on Min.

10

We note that landlord's improper service of the trial court's January 27, 2010 Notice of Renewal of Judgment did not invalidate the renewal of the judgment.  It merely prohibited any efforts by landlord to enforce the judgment until proper service was made.  (See Code Civ. Proc., § 683.160, subd. (b).)  As set forth above, after the trial court denied Min's motion, landlord properly served the trial court's January 27, 2010 Notice of Renewal of Judgment, as well as the trial court's February 28, 2019 Notice of Renewal of Judgment, which was issued six days after Min filed his motion.  Min does not dispute that these documents were properly served.

## DISPOSITION

The order is affirmed.  Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.


We concur:



ROTHSCHILD, P. J.




BENDIX, J.


11